## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MICHAEL CARSON, ROBERT F. BUCHNER, and ROBERT A. BOWDOIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS MICHELIN SCA; COMPAGNIE FINANCIÈRE MICHELIN SA; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; BRIDGESTONE AMERICAS, INC.; and DOES 1-100,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Michael Carson, Robert F. Buchner, and Robert A. Bowdoin (together, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Continental Aktiengesellschaft, Continental Tire the Americas, LLC, Compagnie Générale des Établissements Michelin SCA, Compagnie Financière Michelin SA, Michelin North America, Inc., Nokian Tyres plc, Nokian Tyres Inc, Nokian Tyres U.S. Operations LLC, The Goodyear Tire & Rubber Company, Pirelli & C. S.P.A., Pirelli Tire LLC, Bridgestone Corporation, Bridgestone Americas, Inc., and unidentified Does 1-100 (collectively "Defendants"). Plaintiffs and the Class seek injunctive relief, treble damages, costs, attorneys' fees, and other just relief for Defendants'

*per se* violations of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

These allegations are based on investigations of counsel, publicly available materials and knowledge, information, and belief.

## INTRODUCTION

1.      This action arises from a *per se* unlawful agreement between Defendants—some of the largest tire manufacturers in the United States and the world—to artificially increase and fix the prices of, and to restrict the supply of, new replacement tires for passenger cars, vans, trucks, and buses sold in the United States ("Tires").

2.      Defendants control nearly two-thirds of the global and U.S. markets for Tires, generating billions of dollars in sales annually.

3.      Defendants effectuated their price fixing conspiracy by, among other means, signaling price increases via public communications and other public statements, coordinated lock-step price increases, and implementing revenue management software to facilitate and exchange pricing information.

4.      On January 30, 2024, the European Commission ("EC") announced dawn raids at the premises of "companies active in the tyres industry in several Member States."[1] The EC justified its dawn raids over suspicion that these companies "violated EU antitrust rules that prohibit cartels and restrictive business practices," and specifically that price coordination took place amongst these companies.[2]

5.      As a direct result of Defendants' conspiracy, as alleged in more detail below, Plaintiffs and members of the Class purchased Tires from Defendants at artificially inflated

---

[1] European Commission, *Commission carries out unannounced antitrust inspections in the tyres sector* (Jan. 30, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561.
[2] *Id.*

prices and were thereby directly injured in their business or property.

6.      Plaintiffs seek to represent a Class of natural persons and entities that purchased Tires directly from Defendants at supracompetitive prices to recover treble damages, injunctive relief, and other relief as is appropriate, based on Defendants' violation of federal antitrust laws. Plaintiffs demand a trial by jury.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this class action lawsuit pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover treble damages and the costs of suit, including reasonable attorneys' fees, for the injuries sustained by Plaintiffs and members of the Class; to enjoin Defendants' anticompetitive conduct; and for such other relief as is afforded under the laws of the United States for violations of Sections 1 and 4 of the Sherman Act (15 U.S.C. §§ 1, 3).

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26). The Court has jurisdiction over Plaintiffs' claims for injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26). This Court also has jurisdiction under 28 U.S.C. § 1332(d) as there are members of each Class who are citizens of a different State than Defendants.

9.      This Court has personal jurisdiction over each of the Defendants. Defendants purposefully directed their business activity toward this District, maintained substantial contacts throughout the United States, including this District, and/or committed overt acts in furtherance of their conspiracy throughout the United States, including in this District. Defendants' conduct has had the intended effect of causing injury to individuals and companies residing in or doing business throughout the United States, including in this

District.

10.     During the Class Period (defined below), Defendants manufactured, sold, and shipped Tires in a continuous and uninterrupted flow of interstate commerce, which included sales of Tires in this District, advertisement of Tires in media in this District, and employment of sales personnel in this District. Defendants' conduct had, and continues to have, a direct substantial, and reasonably foreseeable effect on interstate commerce, including commerce within this District.

11.     Venue is appropriate within this District under 28 U.S.C. § 1391 and 15 U.S.C. §§ 15(a) and 22. During the Class Period, Defendants transacted business within this District and/or had agents in and/or that can be found in this District, engaged in a substantial portion of the activity at issue in this Complaint in this District, and a portion of the affected interstate trade and commerce discussed below was carried out in this District. Additionally, at all relevant times, The Goodyear Tire & Rubber Company was incorporated under the laws of the State of Ohio with its principal place of business in Akron, Ohio.

12.     No other forum would be more convenient for the parties and witnesses to litigate this case.

## THE PARTIES

I.      **Plaintiffs**

13.     Plaintiff Michael Carson ("Plaintiff Carson") is a resident and citizen of the State of New Jersey. Plaintiff Carson purchased four new Bridgestone replacement tires for his passenger car from a Firestone Complete Auto Care location in Queensbury, New York on August 7, 2021. Plaintiff Carson paid unlawfully inflated prices for these Tires.

14.     Plaintiff Robert F. Buchner ("Plaintiff Buchner") is a resident and citizen of the State of Illinois. Plaintiff Buchner purchased four new Bridgestone replacement tires for

his passenger car from a Firestone Complete Auto Care location in Naperville, Illinois on August 19, 2023. Plaintiff Buchner paid unlawfully inflated prices for these Tires.

15.     Plaintiff Robert A. Bowdoin ("Plaintiff Bowdoin") is a resident and citizen of the State of New Jersey. Plaintiff Bowdoin purchased four new Goodyear replacement tires for his passenger car from a Goodyear Auto Service Center located in Cherry Hill, New Jersey on January 16, 2023. Plaintiff Bowdoin paid unlawfully inflated prices for these Tires.

## II.     Defendants

### A.     Continental

16.     Defendant Continental Aktiengesellschaft ("Continental AG"), is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG manufactures and sells Tires for cars, trucks, buses, two-wheel, and specialty segments.[3] Continental AG has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Continental AG manufactured, sold, and/or imported Tires to purchasers in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.

17.     In its 2022 Annual Report, Continental AG reported that its "Tires group sector achieved a particularly positive result, even surpassing expectations with an adjusted EBIT margin of 13.1 percent."[4] For 2022, Continental AG reported sales of €14 billion globally for its tire group.[5] Continental AG's tire group boasts 56,987 employees

---

[3]     Continental    AG,    2022    Annual    Report    75, https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf.
[4] *Id.*
[5] *Id.*

worldwide.[6]

18.     In Continental AG's Tires group sector, sales to dealers and end users represent the largest share of the tire-replacement business. For the Tires group sector, economies of scale are important drivers of profitability.[7] For that reason, "manufacturing takes place at major locations in the dominant automotive markets, namely Europe, the U.S., and China."[8]

19.     Defendant Continental Tire the Americas, LLC ("Continental U.S.") is a limited liability company incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental U.S. is a subsidiary of Continental AG that "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[9] Continental US sells its tires through "independent tire dealers, car dealers, and mass retail companies across North America."[10] Continental U.S. has manufacturing facilities in Barnesville, Georgia (Tire Cord [textile]), Mt. Vernon, Illinois (Passenger/light truck/Commercial truck tires), Sumter, South Carolina (passenger/light truck tires), and Jackson, Missouri (commercial truck tires).[11]

20.     Continental U.S.'s headquarters in Fort Mill, SC is the "operational hub for business in the region and oversees all tire product lines including passenger, light truck,

---

[6] *Id.*
[7] *Id.* at 26.
[8] *Id.* at 28.
[9] U.S. Tire Manufacturers Ass'n, *Continental*, https://www.ustires.org/continental-tire-americas-llc (last visited March 7, 2024).
[10] *Id.*
[11] *Id.*

commercial, two wheel, and specialty tires."[12] The facility has more than 500 employees and includes teams for engineering and technology, sales and marketing, and "central functions."[13]

21.     Continental U.S.'s Sumter Plant is "a tire manufacturing facility [that] produces high-quality, premium lines of passenger and light truck tires for original equipment and replacement markets."[14] It has a "State of the Art manufacturing facility with a growing team of more than 1200 employees."[15]

22.     Continental AG controls Continental U.S. both generally and with respect to the conduct of Continental U.S. in furtherance of the unlawful acts alleged in this Complaint. Continental AG and Continental U.S. are collectively referred to throughout the Complaint as "Continental."

**B.    Michelin**

23.     Defendant Compagnie Générale des Établissements ("CGEM") is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. CGEM manufactures and sell Tires for cars, light trucks, trucks, and specialty vehicles (mining, agriculture and construction, two-wheel and aircraft).[16] CGEM has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period,

---

[12] Continental AG, *Fort Mill, SC*, https://www.continental.com/en-us/career/our-locations/fort-mill/ (last visited March 7, 2024).
[13] *Id*.
[14] Continental AG, *Sumter, SC*, https://www.continental.com/en-us/career/our-locations/sumter/ (last visited March 7, 2024).
[15] *Id*.
[16] Michelin 2022 Universal Registration Document 286-91, https://www.michelin.com/api/v1/@apostrophecms/attachment/download/clnudbhks68jn0tik9s9y0ixq/michelin-deu-2022-us-mel-v2.pdf.

CGEM manufactured, sold, and/or imported Tires to purchasers in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.

24. CGEM is the Michelin Group's parent company, which directly or indirectly owns all of its subsidiaries.[17] CGEM's two main subsidiaries are Manufacture Française des Pneumatiques Michelin, a wholly-owned subsidiary that coordinates all of the Group's manufacturing, sales, and research operations in France and Compagnie Financière Michelin ("CFM"), a wholly-owned subsidiary that owns most of the Group's manufacturing, sales, and research companies outside of France, and coordinates their operations.[18]

25. Compagnie Financière Michelin SA ("CFM"), is a wholly-owned subsidiary of CGEM that owns most of the Group's Tire manufacturing, sales, and research companies outside of France, and coordinates their operations.[19] CFM has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, CFM manufactured, sold, and/or imported Tires to purchases in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.

26. Defendant Michelin North America, Inc. ("Michelin N.A.") is a corporation organized under the laws of the State of New York with its principal place of business at One Parkway South, Greenville, SC 29615-5022. Michelin N.A. is a U.S. subsidiary of CGEM that designs, manufactures, and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks, and motorcycles.[20]

---

[17] *Id*. at 403.
[18] *Id*.
[19] *Id.*
[20] U.S. Tire Manufacturers Ass'n, *Michelin*, www.usTires.org/michelin-north-america-inc (last visited March 7, 2024).

Michelin is one of the leading manufacturers of tires in the United States. In 2022, Michelin had €10.92 billion in sales, 80% of which were generated in the United States.[21] Michelin employs 23,000 people across 34 plants in the United States and Canada.[22] Michelin has manufacturing facilities in, *inter alia*, Alabama (light trucks and passenger tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger tires and truck and bus tires). CGEM controls Michelin N.A. both generally and with respect to the conduct of Michelin N.A. in furtherance of the unlawful acts alleged in this Complaint.

27.     CGEM, CFM, and Michelin N.A. are collectively referred to throughout the Complaint as "Michelin."

### C.     Nokian Tyres

28.     Defendant Nokian Tyres plc is organized under the laws of Finland with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which includes subsidiaries worldwide. Nokian Tyres plc develops and manufactures tires for passenger cars, trucks, and heavy machinery. In 2019, the company's net sales were $1.8 billion, and it employed some 4,700 people. Nokian plc has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Nokian plc manufactured, sold, and/or imported Tires to purchasers in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.

29.     Defendant Nokian Tyres Inc. is a corporation organized under the laws of the

---

[21]     Michelin     2022     Universal     Registration     Document     344, https://www.michelin.com/api/v1/@apostrophecms/attachment/download/clnudbhks68jn0tik9s9 y0ixq/michelin-deu-2022-us-mel-v2.pdf.

[22]     Michelin N.A., *Overview*, https://michelinmedia.com/site/user/files/1/MNA-Fact-Sheet-2023_2.pdf.

State of Delaware. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. Nokian Tyres Inc. produces car and light truck all season Tires and all-weather Tires for consumers in the United States and Canada. Nokian Tyres is headquartered at 501 Union Street in Nashville, Tennessee, housing Nokian Tyres' Vice President, along with members of the company's sales, customer service, IT, logistics, finance, and marketing teams.[23] Nokian Tyres' Inc. manufacturing facilities include a facility located at 520 Nokian Tyres Dr., Dayton, TN., 37321 that produces car and light truck all season tires and all-weather tires for consumers in the United States and Canada.[24]

30.     Defendant Nokian Tyres U.S. Operations LLC is a limited liability company organized under the laws of the State of Tennessee. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. Nokian plc controls Nokian U.S. both generally and with respect to the conduct of Nokian U.S. in furtherance of the unlawful acts alleged in this Complaint.

31.     Nokian Tyres plc, Nokian Tyres, Inc., and Nokian Tyres U.S. Operations LLC are collectively referred to throughout the Complaint as "Nokian."

**D.     Goodyear**

32.     Defendant The Goodyear Tire & Rubber Company ("Goodyear") is a corporation organized under the laws of the State of Ohio with its principal place of business at 200 Innovation Way, Akron, Ohio 44316-0001. Goodyear is one of the world's leading

---

[23] Nokian Tyres plc, *Nokian Tyres Appoints Mr. Mark Earl to Lead the Americas Business Area As of May 1, 2018* (Mar. 16, 2018), https://www.nokiantyres.com/company/news-article/nokian-tyres-appoints-mr-mark-earl-to-lead-the-americas-business-area-as-of-may-1-2018; Nokian Tyres plc, *Nokian Tyres Thriving in New Nashville Headquarters* (Dec. 12, 2018), https://www.nokiantires.com/company/news-article/nokian-tyres-thriving-in-new-nashville-headquarters/.

[24] *Nokian Tyres opens $360M tire factory in Tennessee* (Oct. 3, 2019), https://journalrecord.com/2019/10/nokian-tyres-opens-360m-tire-factory-in-tennessee/.

tire companies, with one of the most recognizable brand names. It develops, manufactures, markets, and distributes tires for most applications and manufactures, and markets rubber-related chemicals for various uses.[25] Through its worldwide network of aligned dealers and wholesale distributors, and its own retail outlets and commercial truck centers, Goodyear offers its products for sale to consumer and commercial customers, along with repair and other services.[26] Goodyear manufactures its products in 57 facilities in 23 countries and has operations in most regions of the world. Goodyear manufactures and sells  under  the Goodyear, Cooper,  Dunlop,  Kelly, Debica,  Sava,  Fulda, Mastercraft, and Roadmaster brands.[27] The principal channel for the sale of Goodyear and Cooper brand tires in Americas is a large network of independent dealers. Goodyear, Cooper, Dunlop, Kelly, and Mastercraft brand tires are also sold to numerous national and regional retailers, in Goodyear company-owned stores in the United States, and through the wholesale channel, including through TireHub, LLC, Goodyear's national wholesale tire distributor in the United States, and a network of aligned U.S. regional wholesale tire distributors.[28]

E.    Pirelli

33.    Defendant Pirelli & C. S.p.A. ("Pirelli & C") is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy. Pirelli & C designs, manufactures, and distributes tires for cars, motorcycles, and bicycles. Pirelli &C focuses its business on the high end, premium product segment where it

---

[25]   The Goodyear Tire & Rubber Co., 2022 Annual Report 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf.
[26] *Id.*
[27]   The Goodyear Tire & Rubber Co., Annual Report (Form 10-K) (Feb. 13, 2023), https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296.
[28] *Id.*

is a world leader. Pirelli has a commercial presence in over 160 countries and 19 manufacturing sites in 12 countries. Pirelli & C has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Pirelli & C manufactured, sold, and/or imported Tires to purchasers in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.[29]

34.    Defendant Pirelli Tire LLC ("Pirelli Tire") is a foreign limited liability company organized under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, GA 30161. Pirelli Tire is a subsidiary of Pirelli & C. Pirelli Tire includes the Modular Integrated Robotized System facility and research and development center at its Rome, Georgia headquarters, a state-of-the-art manufacturing plant in Silao, Mexico, sales and marketing offices in New York City, Los Angeles, Detroit, Montreal, and Atlanta, and a prestige flagship store in Los Angeles.[30] The company manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications. Pirelli & C controls Pirelli Tire both generally and with respect to the conduct of Pirelli Tire in furtherance of the unlawful acts alleged in this Complaint.

35.    Pirelli & C and Pirelli Tire are collectively referred to throughout the Complaint as "Pirelli."

**F.    Bridgestone**

36.    Defendant Bridgestone Corporation ("Bridgestone Corp") is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku,

---

[29] U.S. Tire Manufacturers Ass'n, *Pirelli*, https://www.ustires.org/pirelli-tire-llc (last visited March 7, 2024).
[30] *Id.*

Tokyo 104-8340. Bridgestone Corp is the parent corporation of the Bridgestone Group, which refers to all Group companies, including Bridgestone Americas ("BSAM"), Bridgestone China, Asia Pacific ("BSCAP"), Bridgestone Europe, Russia, Middle East, India, and Africa ("BSEMIA"), and Bridgestone Japan ("BSJP").[31] Bridgestone Corp is the world's largest tire and rubber company.[32] Bridgestone Corp has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Bridgestone Corp manufactured, sold, and/or imported Tires to purchasers in the United States and elsewhere, directly and through predecessors, affiliates, and subsidiaries.

37.     Defendant Bridgestone Americas, Inc. ("BSAM") is incorporated under the laws of Nevada with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM is a subsidiary of Bridgestone Corp, BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires to address the needs of a broad range of customers, including consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry, and mining industries.[33] BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[34] Bridgestone Corp controls BSAM both generally and with respect to the conduct of BSAM in furtherance of the unlawful acts alleged in this Complaint.

---

[31]     Bridgestone     3.0     Journey,     2023     Integrated     Report     3. https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf.
[32] U.S. Tire Manufacturers Ass'n, *Bridgestone*, https://www.ustires.org/bridgestone-americas-inc (last visited March 7, 2024).
[33] *Id*.
[34] *Id.*

38. Bridgestone Corp and BSAM are collectively referred to throughout the Complaint as "Bridgestone."

39. Through its subsidiary Bridgestone Retail Operations, Bridgestone operates the largest network of company-owned automatic service providers in the world, which includes nearly 2,200 tire and vehicle service centers across the United States, including Firestone Complete Auto Care, Tires Plus, and Wheelworks store locations.[35]

**G. Doe Defendants**

40. Doe Defendants 1-100 are other individuals or entities who engaged in or abetted the unlawful conduct by Defendants set forth in this Complaint. Plaintiffs may amend this Complaint to allege the names of additional Defendants as they are discovered.

## III. AGENTS AND CO-CONSPIRATORS

41. The anticompetitive and unlawful acts alleged against the Defendants in this Complaint were authorized, ordered, or performed by Defendants' respective officers, agents, employees, or representatives, while actively engaged in the management, direction, or control of Defendants' businesses or affairs. Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers or acquisitions.

42. Each corporate Defendant's agents operated under the authority and apparent authority of its respective principals.

43. Each corporate Defendant, through its respective subsidiaries, affiliates, and agents, operated as a single unified entity.

---

[35] Bridgestone Americas, Inc., *Subsidiaries & Business Units*, https://www.bridgestoneamericas.com/content/bscorpcomm-sites/americas/es_US/corporation/subsidiaries-and-business-units.html (last visited March 7, 2024).

44.     Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof. In particular, individuals or entities providing revenue management or data analytics may have assisted Defendants in exchanging competitively sensitive information and coordinating with Defendants to fix, raise, maintain, and stabilize the price of Tires.

45.     Each Defendant acted as the principal or agent of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

46.     When Plaintiffs refer to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that the Plaintiffs are alleging that one or more employee or agent of entities within the corporate family engaged in conspiratorial acts or meetings on behalf of all of the Defendant companies within that family. Because Defendants market themselves as corporate families, individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they recognize the distinction between the entities within a corporate family. Furthermore, to the extent that subsidiaries within corporate families distributed the tire products discussed in this Complaint, these subsidiaries played a significant role in the conspiracy because Defendants wished to ensure that the prices paid for such products would not undercut their pricing agreements. Thus, all Defendant entities within the corporate families were active, knowing, participants in the conspiracy to maintain supracompetitive prices.

## IV.     FACTS

## A.    The United States New Replacement Tire Market

47.     In the United States, tire manufacturing has an annual economic footprint of $170.6 billion.[36] Approximately 80% of market demand for tires is demand for replacement tires[37] generating billions of dollars in sales—and profit—annually.[38] The value of the replacement tire market in the U.S. in 2022 was $61.42 billion, with $38 billion attributable to passenger vehicles, $11.7 billion attributable to trucks, and the remainder attributable to light truck, off road, and farm vehicles.[39]

48.     Defendants make up some of the largest tire manufacturers in the world. Bridgestone is the world's largest tire and rubber company,[40] with about 130 manufacturing plants and R&D facilities in 25 countries, and sells products in more than 150 countries worldwide. Michelin has nine R&D centers around the world, 123 production sites in 26 countries, a commercial presence in 170 countries, and 125,000 employees worldwide, and does business on every continent.[41] Goodyear employs about 72,000 people and

---

[36] U.S. Tire Manufacturers Ass'n, *Economy*, https://www.ustires.org/economy (last visited March 7, 2024).

[37] *US Tire Market Size, Trends, Forecast & Risk 2024-2030*, Mobility Foresights, https://mobilityforesights.com/product/us-tire-market/#:~:text=Although%2080%25%20of%20the%20market%20demand%20is%20generated,brings%20more%20visibility%20and%20credibility%20to%20the%20brand (last visited March 7, 2024).

[38] 1 Will Creech, *Tire Production Statistics*, Tire Grades (Aug. 30, 2023), https://tiregrades.com/buying-guides/tire-production-statistics/#:~:text=Tire%20Production%20Statistics%201%20Global%20Tire%20Production%3A%20Over,Firestone.%205%20Emerging%20Retail%20Platforms%3A%20Tire%20Rack%2C%20Amazon.

[39] Martin Placek, *U.S.: replacement tire market size 2016-2022*, Statista (Dec. 8, 2023), https://www.statista.com/statistics/581639/size-of-the-pneumatic-tire-market-in-the-us/#:~:text=In%202022%2C%20the%20U.S.%20market,2022%2C%20followed%20by%20truck%20tires.

[40] Bridgestone, https://www.bridgestone.com/ (last visited March 7, 2024).

[41] Michelin, *A Global Footprint* (Jan. 11, 2024) https://www.michelin.com/en/michelin-group/about-us/global-footprint/.

16

manufactures its products in 57 facilities in 23 countries around the world.[42] Pirelli has 18 factories located in 12 countries, production capacity in 2022 of 74 million car tires, and points of sale in over 160 countries (around 20,000 in 2022).[43] Continental employs almost 200,000 people at 519 locations for production, research, and development, and is present in 57 countries and markets.[44]

49.     Manufactured tires can either be used in new cars ("OE" tires) or produced as dedicated replacement tires. There are differences between OE tires and dedicated replacement tires. OE tires are those tires that are specified by the vehicle manufacturer and are initially fitted to the vehicle when new. The car manufacturer works with tire companies to choose a tire that will meet any number of performance requirements for their brand-new vehicle. The manufacturer selects a tire that balances ride noise, handling, longevity, and fuel efficiency to achieve the overall characteristics that the vehicle manufacturer believes is important to the end-user. By contrast, dedicated replacement tires are selected by individual consumers.

50.     The market for dedicated replacement tires in the United States was sized at approximately $61 billion in 2022.[45]

51.     The "Tires" market, or the United States new tire replacement industry for

---

[42] Goodyear, Corporate, https://corporate.goodyear.com/us/en/about.html (last visited March 7, 2024).
[43] Pirelli, About, https://corporate.pirelli.com/corporate/en-ww/aboutus/pirelli-in-brief (last visited March 7, 2024).
[44]        Continental        AG,        2022        Annual        Report        26, https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpage s/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pd f.
[45] *Must-Know Tire Industry Statistics [Latest Report]*, Gitnux (Dec. 16, 2023), https://gitnux.org/tire-industry-statistics/.

cars, vans, trucks, and buses, consists of tires that Plaintiffs and members of the Class have purchased to replace worn or defective tires on their vehicles.

52.     For at least as long as the Class Period, the Tires market has been characterized by numerous factors that facilitated Defendants' conspiracy. The industry has exhibited (1) market concentration amongst a limited number of participants; (2) high barriers to entry and exit; (3) inelasticity of demand; (4) ease of information sharing among Defendants, and (5) and a high level of standardization that renders Tires largely interchangeable with each other.

**B.      The Tires Market Is Highly Concentrated**

53.     The tires industry is a highly concentrated market where a small number of firms have operated and dominated the industry for a great number of years. The more highly concentrated a market is, the less competitive it can tend to become. When more than two companies, but still a small number, compete in, dominate, and control a given market sector that all are influential players in the market, the market can be described as an oligopoly.

54.     The Tires market is oligopolistic: in 2022, Defendants Bridgestone, Michelin, and Goodyear made up almost 64 percent of the entire replacement tire market. Each of the Big Three also encompasses subsidiary brands: (i) Goodyear: Goodyear, Cooper Tires, Dunlop, and Kelly, (ii) Michelin: Michelin, BF Goodrich, and Uniroyal, (iii) Bridgestone: Bridgestone and Firestone.[46]

55.     The remaining 36 percent of the market includes manufacturers such as Continental and Nokian.

---

[46] *The 'Goliaths' of the Replacement Tire Industry Are Getting Bigger. How Can the 'Davids' Compete?*, TraQline (Feb. 14, 2022), https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are-getting-bigger-how-can-the-davids-compete/ .



56.     In 2023, brands produced by Goodyear, Michelin, and Bridgestone remained

the most popular in the United States:



57.     This concentration makes the Tire market more susceptible to cartelization—a smaller group of competitors is better able to solve the coordination and trust problems that can prevent cartel formation or destabilize an existing cartel. A smaller number of negotiators makes it easier for the conspirators to agree on a cartel price, to allocate market shares, to conceal their collusion, to develop enforcement mechanisms, and to detect and punish cheaters. This market structure can give Defendants influence over price and other aspects of the market in the presence of collusive activity.

58.     While the supply-side of the replacement tires market is highly concentrated, the buy-side is unconcentrated, another factor consistent with collusion. Defendants sell replacement tires directly to independent tire dealers, auto dealerships, mass merchandisers,

warehouse clubs, and customers buying directly from Defendants' wholly-owned retail locations.

59.     With a large number of buyers, each of whom forms a small share of the total marketplace, there is less incentive for cartel members to cheat on collusive pricing arrangements, since each potential sale is small while the risk of disrupting the collusive pricing agreement carries large penalties.

### C.    The Tires Market Features High Barriers to Entry and Exit

60.     Companies seeking to enter the tire manufacturing industry confront various significant barriers to entry, including high labor intensity, complex production processes, high degree of equipment specialization, and large up-front capital investments to establish manufacturing plants that can produce tires at scale. These manufacturing plants need to be close enough to the end consumers to make shipping costs not prohibitive, as Tires are heavy products. Manufacturing plants must either have sophisticated and expensive automation or a large and expensive labor force. Established Tire manufacturers have also erected significant intellectual property protections through patented products.

61.     Further, Defendants are, to a large extent, vertically integrated. New entrants to the industry are unable to rival Defendants' ability to control multiple stages of tire production. Given these barriers, new entrants are unlikely to be able to compete away supracompetitive cartel pricing.

62.     As to exit barriers, because a huge amount of investment is required to set up a manufacturing plant and to shift to new business, it is extremely difficult to exit from the tire industry. For example, Uniroyal and Goodrich had to merge due to high exit barriers. Thus, consolidation is more likely than companies going out of business.

63.     Notable examples of tire manufacturing industry consolidation include:

a.    In 1987, Continental acquired General Tire, an American tire manufacturer.

b.    In 1988, Bridgestone acquired Firestone Tire and Rubber Company, the original equipment supplier of Ford automobiles.

c.    In 2004, Continental AG purchased Phoenix AG, a rubber product production company.

d.    In 2006, Bridgestone acquired Bandag, Inc., a tire production company.

e.    In 2018, Goodyear formed TireHub with Bridgestone for wholesale distribution in the United States.

f.    In 2018, Michelin acquired Camso, a leading Canadian tire manufacturer.

g.    In 2018, Michelin acquired Fenner PLC, the global leader in reinforced polymer-based tire products to expand Michelin's tire business.

h.    In 2021, Goodyear acquired Cooper Tire & Rubber Co., the fifth-largest North American tire maker.

64.    Because the Tire market has high barriers to entry and exit, it is more conducive to collusion. To maximize long-term profits, the cartel-fixed price must be sufficiently high to warrant participation in a criminal conspiracy, but not so high as to lure new competitors into the market. When a market is protected by high barriers to entry, conspirators are better able to fix a high price with less worry that new firms will come into the market and bid the price down. In contrast, firms may not bother to conspire to fix prices if interlopers cannot be excluded from the market.

### D.    Demand for Tires is Inelastic

65.    Demand is inelastic for most tire industry products. When there are few or no substitutes for a product, purchasers have little choice but to pay higher prices in order to purchase these products. Tires are a fundamental and necessary component to motor vehicle function. Anyone with a car, van, truck, or bus also needs tires. Tires perform a particular function that cannot be replicated by substitute products.

66.    The price elasticity of demand shows the responsiveness of the quantity

demanded of a good, relative to a change in its price. When a seller of goods or services can increase selling price without suffering a substantial reduction in demand, pricing is considered inelastic. For example, gasoline has little price elasticity of demand. Drivers will continue to buy as much as they have to, as will airlines, the trucking industry, and nearly every other buyer.

67.     Demand elasticity affects whether price fixing is likely to be profitable. When demand is inelastic, a seller with market power can charge a higher price without losing significant sales. This market characteristic encourages collusion because rivals can collectively raise prices profitably.

68.     Tires are highly inelastic because tire replacement is not an option that can be deferred for long, particularly when a tire is damaged. Customers must purchase Tires as an essential part of almost every wheeled vehicle, even if the prices are at supracompetitive levels. Likewise, under certain circumstances, a customer may need to replace her Tires, with no choice but to pay supracompetitive prices. Further, the cost of replacement tires makes up a small percentage of the operating cost of a car.

69.     Furthermore, tires do not compete with other products in the functional sense; consequently, there is no inter-industry competition through cross-elasticities of demand. Since the demand for tires is derived from the need to use the automobile, buyers cannot be induced to buy more or less of the product in any significant sense through price changes.

70.     Because the price for Tires is highly inelastic, Defendants were able to, and did, collectively raise prices to supracompetitive levels without losing revenue. As Bridgestone America's Chief Operating Officer reported in July 2022, "We're certainly seeing a red-hot economy that, despite the price increases and inflation, demand still remains

quite strong."[47]

71.    Indeed, the Defendants largely experienced an increase in revenue in 2022, which corresponded with their increased prices for replacement tires. In 2022:

   a.    Michelin reported $30.1 billion in revenue, up about 7% from 2021;[48]

   b.    Bridgestone reported $27.7 billion in revenue, a year-on-year increase of 27%;[49]

   c.    Continental reported $42.3 billion in revenue, up 16.7% from 2021;[50]

   d.    Goodyear reported $20.8 billion in revenue, up 19% from 2021;[51]

   e.    Pirelli reported $7.1 billion in revenue, a growth of 24.1% compared to 2021;[52]

   f.    Nokian reported $1.9 billion in revenue, up 3.6% from 2021.[53]

72.    Nor did the rapidly inflated prices cause Defendants' sales volumes to suffer, as would be expected in a price-competitive market. From 2020, the global Tire market increased 18% year over year in 2021 to around $180 billion. By 2022, demand had returned

---

[47] *Rising tire prices affected by several factors*, Tire Business (July 8, 2022), https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors.

[48] *Michelin Revenue 2010-2023*, Macrotrends, https://www.macrotrends.net/stocks/charts/MGDDY/michelin/revenue#:~:text=Michelin%20annual%20revenue%20for%202022,a%2013.5%25%20decline%20from%202019.

[49] Bridgestone Corp., Consolidated Financial Statements for the Fiscal Year Ended December 31, 2022 (Feb. 16, 2023), https://www.bridgestone.com/ir/library/result/pdf/e_R4_4_4_results.pdf.

[50] Continental AG, *Preliminary Full Year 2022 Results*, https://www.continental.com/en/investors/events/results/preliminary-full-year-results-2022/.

[51] The Goodyear Tire & Rubber Co., 2022 Annual Report, https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf.

[52] Pirelli, Annual Report 2022, https://corporate.pirelli.com/var/files2022/EN/PDF/PIRELLI_ANNUAL_REPORT_2022_ENG.pdf.

[53] Erin Pustay Beaven, *Nokian posts record sales after tough 2022*, Rubber News (Feb. 10, 2023), https://www.rubbernews.com/financial/nokian-optimistic-about-2023-despite-tough-second-half-2022#:~:text=Even%20with%20all%20of%20its,when%20comparable%20currencies%20are%20considered..

in line with 2019 levels.

73.     For example, Continental's sales volume rose by 19.3% in 2022. In Continental's 2022 annual report, Continental indicated that "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[54]

74.     Because the price for Replacement Tires is highly inelastic, Defendants were able to, and did, collectively raise prices to supracompetitive levels without losing revenue.

**E.     The Tires Market Features Ample Opportunity for Information Sharing Through Trade Organizations and Business Relationships**

75.     Throughout the Class Period, Defendants had ample opportunity to share competitive information with each other due to the market consolidation described *supra*, their common membership in trade associations, and interrelated business relationships between certain executives, officers, and employees of the Defendants.

76.     Participation in trade associations and other business relationships make a market more susceptible to collusive behavior because they can provide a pretense under which conspirators can exchange sensitive company information, such as pricing and market allocation.

77.     For example, Defendants are all members of the U.S. Tire Manufacturer's Association ("USTMA"), the national trade association for tire manufacturers that produce tires in the United States.[55] The USTMA lobbies on behalf of the tire manufacturing

---

[54] Continental AG, 2022 Annual Report, https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf.
[55] U.S. Tire Manufacturers Ass'n, *About Us*, https://www.ustires.org/about-us (last visited March 7, 2024).

industry's interests before federal and state policymakers. It also develops and offers several industry publications, including tire care and service manuals, bulletins, and wall charts that help educate tire and automotive service professionals.

78.     Moreover, senior executives from each of the Defendants currently serve on the USTMA's board of directors.[56] Michelin N.A.'s President and Chairman Alexis Garcin serves as USTMA's Chairman.[57]

79.     The USTMA holds a number of annual conferences and meetings where Defendants had the opportunity to meet and discuss pricing. For example, the USTMA holds a spring and fall meeting for its board members annually, including on July 29, 2020, October 6, 2021, January 25, 2022, October 6, 2022, April 3-4, 2023, and October 11, 2023.[58] Minutes from these regular meetings are not available to the public.

80.     Additionally, Defendants are all members of The Tire and Rim Association, Inc. ("TRA"). TRA's "primary purpose is to establish and promulgate interchangeability standards for tires, rims, valves and allied parts."[59]

---

[56] U.S. Tire Manufacturers Ass'n, *Leadership*, https://www.ustires.org/leadership.

[57] *Id.*

[58] Henry Willis, *USTMA makes changes to its director board*, Tire Technology Int'l (Aug. 14, 2020), https://www.tiretechnologyinternational.com/news/business/ustma-makes-changes-to-its-director-board.html; U.S. Tire Manufacturers Ass'n, *U.S. Tire Manufacturers Association Names Bridgestone's Paolo Ferrari As Board Chair*, https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari-board-chair (last visited March 7, 2024); *USTMA Announces Four New Board Members*, Modern Tire Dealer (Jan. 27, 2022), https://www.moderntiredealer.com/retail/article/11466086/ustma-announces-four-new-board-members; U.S. Tire Manufacturers Ass'n, *USTMA Board of Directors Holds Spring Meeting in Washington, DC, Admits Giti Tire USA As 12th Member Company*, https://www.ustires.org/ustma-board-directors-holds-spring-meeting-washington-dc-admits-giti-tire-usa-12th-member-company (last visited March 7, 2024); *Michelin CEO Named USTMA Chairman*, Modern Tire Dealer (Oct. 12, 2023), https://www.moderntiredealer.com/suppliers/article/33013078/michelin-ceo-named-ustma-chairman.

[59] Tire and Rim Ass'n, Inc., https://www.us-tra.org/ (last visited March 7, 2024).

81.     Defendants Goodyear and Bridgestone also serve on the executive committee of the Tire Society, a not-for-profit organization "with the mission to disseminate knowledge and stimulate the innovation of tires as it pertains to tire science, engineering and technology."[60] The Tire Society holds an annual event known as the Conference on Science and Technology.[61] Alexis Garcin was a keynote speaker at the 41st Conference on Science and technology in September 2022.[62]

82.     Defendants also meet annually at the International Tire Exhibition & Conference, the largest U.S. conference in the tire industry, which attracts executives from all major tire companies.[63]

83.     The Tire Industry Association ("TIA") is an international non-profit association representing all segments of the tire industry, including companies that manufacture, repair, recycle, sell, service, or use new or retreaded tires, and also those suppliers or individuals who furnish equipment, material, or services to the industry.[64] Defendants consistently serve as sponsors at TIA's events. In fact, at the 69th annual Off-The-Road Tire Conference, Defendants Bridgestone and Continent were signature sponsors.[65] At the same event, Defendants Michelin, Goodyear, and Nokian Tyres are serving as conference sponsors.[66] Defendant Bridgestone served as a Gold Sponsor at the

---

[60] Tire Society, *About*, https://www.tiresociety.org/about/ (last visited March 7, 2024).
[61] Tire Society, *ITEC, Tire Society events highlight 'Tire Week in Akron'* (July 28, 2022), https://web.archive.org/web/20220919195610/https://www.rubbernews.com/news/goodyear-michelin-ustma-speakers-itec-tire-society.
[62] *Id*.
[63] *Id*.
[64] Tire Industry Ass'n, https://www.tireindustry.org/ (last visited March 7, 2024).
[65] Tire Industry Ass'n, *Sponsorship*, https://www.tireindustry.org/events/otr/sponsorship/ (last visited March 7, 2024).
[66] *Id*.

2023 Global Tire Expo.[67]

84.     Furthermore, in 2018, Defendants Goodyear and Bridgestone joined forces to form TireHub LLC, creating "one of the largest tire distribution joint ventures in the United States."[68]

85.     As a result of this new joint venture, Defendant Goodyear terminated its distribution relationship with American Tires Distributors ("ATD"). Stuart Schuette, president and CEO of ATD said,

**F.     Tires are Standardized Products with a High Degree of Interchangeability**

86.     Defendants make similar models of Tires for each of the type-categories listed above (all-season, all-terrain, winter/snow, and summer tires). Within each type-category, Tires do not differ significantly in quality, appearance, or use. As a result, Tire models are functionally interchangeable.

87.     When purchasing a new set of four replacement tires, consumers can choose almost any brand on the market. Even when consumers are replacing only some of the four tires, they can use tires from different brands or models so long as certain features, such as tread depth, are similar.

88.     Thus, Tire producers are not likely to be able to deviate much from the competitive price without losing sales.

89.     Tires are commodity-like products that are interchangeable at the design stage. They are also interchangeable at the replacement stage. Most Tire manufacturers label

---

[67] Tire Industry Ass'n, *2023 Global Tire Expo*, https://www.tireindustry.org/events/gte/ (last visited March 7, 2024).
[68] The Goodyear Tire & Rubber Co., *Goodyear, Bridgestone Join Forces to Form U.S. National Tire Distributor*, PR Newswire (Apr. 16, 2018), https://www.prnewswire.com/news-releases/goodyear-bridgestone-join-forces-to-form-us-national-tire-distributor-300630525.html.

Tires with the Tire's type, width, aspect ratio, construction type, diameter, load index, and speed rating:

90.     **Type.** The first letter of the Tire code sequence represents the vehicle type. "P" stands for passenger vehicle Tire, which includes sedans, coupes, crossover, SUVs, and minivans. "LT" represents light trucks and "ST" indicates special trailer Tires.

91.     **Width.** The next three numbers on a Tire correspond with the width of the Tire in millimeters measured from sidewall to sidewall.

92.     **Aspect Ratio.** The aspect ratio follows the Tire width. The aspect ratio is the percentage of the Tire's height to its width where height is measured in millimeters from the edge of the wheel rim to the top of the tread.

93.     **Construction Type.** The letter following the aspect ratio describes the construction type. The most common construction types are "R", meaning the layers run radially across the Tire, "D" for a diagonal or bias ply construction, and "B" where the Tire has a belted bias.

94.     **Wheel Diameter.** After the construction type, the manufacturer lists the wheel diameter, describing the width of the rim upon which the Tire will fit. This is the number used to describe the Tire size.

95.     **Load Index.** The next two to three-digit number describes how much weight the Tire can bear.

96.     **Speed Rating.** Finally, the Tire indicates the top speed that it is designed to ride.

97.     When products are interchangeable, the primary way to compete is on the basis of price. The avoidance of price-based competition is the primary motivation for

forming a cartel. Thus, cartels are more likely when the participants sell interchangeable products. Where a product like a Tire is interchangeable, economics suggests that cartel behavior is facilitated because, *inter alia*, cartel members can more easily monitor and detect defections from a price-fixing agreement.

### G. Defendants Colluded to Coordinate Price Increases and Supply Restrictions on New Replacement Tires in the U.S. During the Class Period

#### 1. Defendants Implemented Parallel Price Increases for New Replacement Tires in the United States

98.     Since at least 2021, Defendants have coordinated price increases to increase their profits. The justifications offered by the Defendants—that their price increases were due primarily to increased input costs—were pretextual and do not fully account for the significant increases in prices over the Class Period.

**99.**     Tire prices in the United States were stable throughout most of the 2010s, changing only by small amounts slowly. Beginning in 2021, however, tire prices have increased dramatically—more than 28%[69]—fueled by lock-step price increases from the major U.S. Tire manufacturers, including Defendants:

---

[69] U.S. Bureau of Labor Statistics, Producer Price Index by Industry: Tire Manufacturing, Except Retreading: Pneumatic Tires (Including Passenger, Truck, Bus, Tractor, Industrial, and Other Tires) [PCU3262113262110], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/PCU3262113262110.



100.    *ProPublica* reported in March 2023 that the average price of Tires had risen 21.4% over a two-year period, 70% higher than core inflation.[70] Prices for Tires have remained high despite easing inflation and dissipating effects of the COVID-19 pandemic.[71] "As of June 2023, the industry average price paid . . . for tires was $220."[72]

101.    Moreover, Defendants' price increases outstripped any increased costs they incurred during the COVID-19 pandemic. For example, during its quarterly earnings call with investors on May 6, 2022, Goodyear's then-Chief Financial Officer Darren Wells touted

---

[70] Michael Grabell, *Overinflated: The Journey of a Humble Tire Reveals Why Prices Are Still So High*, Pro Publica (May 3, 2023), https://www.propublica.org/article/inflation-Tires-rubber-imports-high-prices.
[71] *Id.*
[72] *Tire Market: Top Brands & Retailers, Market Share, Retail Sales Data, & Trends in 2023*, Traqline (Oct. 20, 2023), https://www.traqline.com/newsroom/blog/tire-market-top-brands-retailers-market-share-retail-sales-data-trends-in-2023/.

that "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[73] In the first quarter of 2023, Goodyear CEO Richard J. Kramer highlighted that "over the last 2 years, [Goodyear attained] about 30% in revenue per tire."[74] Similarly a Bridgestone spokesman admitted in May 2022 that the company has not experienced any production disruptions: "We monitor all critical raw materials and global logistics closely and do not foresee any impacts to our supply at this time."[75]

102.    The following table summarizes Defendants' price increases on passenger and light truck replacement tires from 2021 to 2023:

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Goodyear | December 1, 2020 | Up to 5% |
| Bridgestone | January 1, 2021 | Undisclosed |
| Pirelli | January 1, 2021 | Undisclosed |
| Michelin | February 1, 2021 | Up to 5% |
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |
| Goodyear | April 1, 2021 | Up to 8% |
| Pirelli | April 15, 2021 | Up to 7% |

---

[73] The Goodyear Tire & Rubber Co*., The Goodyear Tire & Rubber Company (GT) Q1 2022 Earnings Call Transcript* (May 6, 2022), https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call-transcript/.

[74] The Goodyear Tire & Rubber Co*., Q1 2023 Goodyear Tire & Rubber Co Earnings Call* (May 5, 2023), https://finance.yahoo.com/news/q1-2023-goodyear-tire-rubber-012653565.html.

[75] Emmet White, *How Tire Manufacturers Averted Crisis—And Kept Rolling*, Autoweek (May 27, 2022), https://www.autoweek.com/news/technology/a40108525/how-tire-manufacturers-averted-crisis-supply-shortage/.

| | | |
|---|---|---|
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |
| Continental | April 1, 2022 | Undisclosed |
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |

| Michelin | June 1, 2022 | 5 to 12% |
|---|---|---|
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |
| Michelin | January 1, 2023 | Up to 9% |
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

103.    Defendants coordinated price increases and production limitations through public announcements and statements on investor calls. As Goodyear's then-Chief Financial Officer Darren Wells explained during a conference call with investors, Defendants were tracking each other's pricing:

104.    [W]e've got to acknowledge that we've got major competitors who have announced two or three price increases during calendar year '22. And Goodyear-North America has announced an increase of up to 12% on January 1. Now the announcements of our competitors generally have been lower amounts, but there have been a couple of them that have been double digits. So we have to acknowledge that. And then if we go back to last year, Goodyear announced three price increases of up to 8% during 2021. And our major competitors announced three or four price increases generally as well, some of which were unspecified in amounts, but most of which were in the mid-single digits. So those are the

announcements that we've seen.[76]

105.    The coordinated price increases for Tires began in December 2020, when Goodyear increased prices on Goodyear and Dunlop brand consumer tires in the U.S. by up to 5%.[77]

106.    Then, in December 2020, Bridgestone announced increased prices for select Bridgestone and Firestone passenger and light truck replacement tires sold in the U.S. and Canada, effective January 1, 2021.[78] Pirelli also raised prices on its passenger and light truck tires sold in the United States, attributing the increases to "changing market conditions."[79]

107.    Just a few weeks later, Michelin N.A. announced an increase of 5% on select Michelin and BFGoodrich brand passenger and light trick truck tires and select commercial offers to fleet customers "due to changing business dynamics of the U.S. market" that would take effect February 1, 2021.[80]

108.    And on or about January 6, 2021, Continental U.S. announced that it would increase the price of select Continental and General brand passenger and light truck tires within the U.S., effective March 1, 2021, with the increases "vary[ing] across products and

---

[76] The Goodyear Tire & Rubber Co., *The Goodyear Tire & Rubber Company (GT) Q1 2022 Earnings Call Transcript* (May 6, 2022), https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call-transcript/.

[77] *Goodyear Consumer Tire Prices Are on Their Way Up*, Modern Tire Dealer (Nov. 13, 2020) https://www.moderntiredealer.com/topics/industry-news/article/11475914/goodyear-consumer-tire-prices-are-on- their-way-up-2020-11-13.

[78] *Bridgestone to Increase Prices on PLT Replacement Tires*, Tire Review (Dec. 2, 2020), https://www.tirereview.com/bridgestone-increase-prices-plt-replacement-tires/.

[79] Tire Review Staff, *Pirelli Announces Price Increase on Car, Light Truck Tires*, Tire Review (Dec. 3, 2020), https://www.tirereview.com/pirelli-announces-price-increase-on-car-light-truck-tires/.

[80] Michelin N.A., *Michelin Implements Price Increase Across Passenger Brands and Select Commercial Offers in the U.S. Market*, PR Newswire (Dec. 18, 2020), https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-select-commercial-offers-in-the-us-market-301196166.html.

brand."[81]

109.    Then, in early March 2021, both Goodyear and Michelin announced price increases effective April 1, 2021. Michelin N.A. announced that it would increase prices on select Michelin, BFGoodrich, and Uniroyal passenger and light truck tires in the U.S. and Canada up to 8% citing "changing business dynamics and rising costs of raw materials."[82] Similarly, Goodyear announced that it would raise prices of its Goodyear, Dunlop and Kelly-brand consumer tires by up to 8%, claiming that the increases were "in response to changing market dynamics in the industry and reflect the strong value of the Goodyear brands."[83]

110.    Days after Michelin and Goodyear announced their April 2021 price increases, Pirelli Tire followed suit, announcing that it would raise prices on its passenger and light truck tires in the U.S. up to 7% effective April 15, 2021, citing "higher price of raw materials and changing market conditions."[84]

111.    Later that same month, BSAM followed these price increases, announcing that it would raise prices on select Bridgestone and Firestone brand passenger and light truck tires up to 8% in the United States and Canada on May 1, 2021, because of "increased business costs and other market dynamics."[85]

---

[81] *Continental Plans Price Hike on PLT Tires*, Modern Tire Dealer (Jan. 6, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plans-price-hike-on-plt-Tires-2021-01-06.

[82] *Michelin Will Raise Consumer Tire Prices on April 1*, Modern Tire Dealer (Mar. 1, 2021), https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01.

[83] *Goodyear to Increase Consumer Tire Prices*, Modern Tire Dealer (Mar. 3, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03.

[84] *Pirelli Will Raise Prices in U.S. on April 15*, Modern Tire Dealer (Mar. 9, 2021), https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09.

[85] *Bridgestone to Raise Consumer Tire Prices on May 1*, Modern Tire Dealer (Mar. 24, 2021),

112.    Then, on May 3, 2021, Goodyear announced that it would also increase prices on its Goodyear, Dunlop, and Kelly consumer tires by up to 8% on June 1, 2021, citing "changing market dynamics in the industry" and "the strong value of the Goodyear brands."[86]

113.    On May 18, 2021, Pirelli announced that, effective July 1, 2021, it would increase prices for its cars and light truck tires in the U.S. up to 6%.[87]

114.    On June 1, 2021, BSAM announced its own additional price increases of up to 8% on select Bridgestone, Firestone, and Fuzion passenger and light truck tires sold in the U.S. and Canada, effective July 1, 2021.[88]

115.    Michelin, Continental, and Pirelli also implemented price increases on tires effective July 1, 2021. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 6%.[89] Continental increased prices on select Continental and General brand passenger and light truck tires by an undisclosed amount.[90] Pirelli increased prices of passenger and light truck tires by up to

---

https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24.

[86] *Goodyear Plans Another Consumer Tire Price Hike*, Modern Tire Dealer (May 3, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-tire-price-hike.

[87] *Pirelli Announces U.S. Price Increase for PLT Tires*, Tire Review (May 19, 2021), https://www.tirereview.com/pirelli-us-price-increases-tires/.

[88] *Bridgestone Americas Announces Price Increase*, Tire Review (June 1, 2021), https://www.tirereview.com/bridgestone-price-increase/#:~:text=Bridgestone%20today%20announced%20it%20will%20increase%20prices%20up.

[89] Michelin N.A., *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, PR Newswire (May 17, 2021), https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301292713.html.

[90] *Price Increase Coming on Continental, General PLT Tires*, Tire Review (May 6, 2021), https://www.tirereview.com/price-increase-continental-general-plt-tires/.

6%, citing higher price of raw materials and changing market conditions.[91]

116.    Effective September 1, 2021, Michelin and Goodyear implemented another round of price increases on consumer tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 14%.[92] Goodyear increased prices on passenger and light truck tires by up to 8%.[93]

117.    Continental and Pirelli then increased prices on tires effective October 1, 2021. Continental increased prices on some Continental and General passenger and light truck tires by an undisclosed amount.[94] Pirelli increased prices on car and light truck tires by up to 8%, citing higher prices of raw materials and changing market conditions.[95]

118.    On November 3, 2021, Nokian announced "further price increases in a wide range of markets and products" and announced a 27% increase in net sales and 43% rise in operating profit in its quarterly earnings report.[96] Nokian's financial statements confirm that is also increased prices in 2022 and 2023.

119.    Effective January 1, 2022, Defendant Michelin implemented price increases

[91]    *Pirelli Plans Another Price Hike*, Modern Tire Dealer (May 18, 2021), https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike.

[92] Michelin N.A., Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market (Aug. 2, 2021), https://michelinmedia.com/pages/blog/detail/article/c/a1110/.

[93] *Goodyear and Cooper Consumer Tire Prices Are Going Up*, Ratchet+Wrench (Aug. 10, 2021), https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper-consumer-tire-prices-are-going-up-modern-tire-dealer.

[94]    *Continental Tire Announces Price Increase*, Tire Review (Aug. 30, 2021), https://www.tirereview.com/continental-tire-announces-price-increase/.

[95]    *Pirelli raising prices for fourth time in 2021*, Rubber News (Aug. 31, 2021), https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1.

[96] *Nokian Tyres Beats Profit Expectations After Raising Prices*, Economic Times (Nov. 3, 2021), https://auto.economictimes.indiatimes.com/news/tyres/nokian-tyres-beats-profit-expectations-after-raising-prices/87504195.

up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and light truck replacement tires. Similarly, Goodyear raised its prices on consumer tires by up to 12%.[97] Other Defendants followed these increases that same month, with Continental increasing prices on select Continental and General passenger and light truck tires, effective January 3, 2022, by an undisclosed amount,[98] and Pirelli increasing its prices for car and light truck tires by up to 10% effective January 17, 2022.[99]

120.    On April 1, 2022, several Defendants yet again increased prices. Continental increased its price on select Continental and General passenger and light trucks by an amount that varied across specific products by brand.[100] Michelin N.A. increased prices by 5% on the majority of select passenger and light truck replacement tires.[101] BSAM increased prices by up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires.[102] Effective April 11, 2022, Pirelli increased its prices in the U.S. for car and light truck tires by up to 10%, citing "changing market conditions."[103]

[97] *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*, PR Newswire (Dec. 1, 2021), https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html.

[98] Madeleine, Winer, *Continental Tire Announces Price Increase*, Tire Review (Nov. 9, 2021), https://www.tirereview.com/continental-tire-announces-price-increase-2/.

[99] Danielle Hess, *Pirelli Announces Price Increases for Car, Light Truck Tires*, Tire Review (Jan. 3, 2022), https://www.tirereview.com/pirelli-price-increases/.

[100] Christian Hinton, *Continental Tire Announces Price Increase*, Tire Review (Mar. 1, 2022), https://web.archive.org/web/20230921183416/https://www.tirereview.com/continental-tire-announces-price-increase-3/.

[101] Michelin N.A., *Michelin Implements Price Increases Across Passenger Brands and Commercial Offers in North American Market* (Mar. 1, 2022), https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber.

[102] *Bridgestone, Michelin raising prices April 1* (Mar. 1, 2022), https://www.tirebusiness.com/news/bridgestone-michelin-raising-prices-april-1.

[103] Christian Hinton, *Pirelli Increases Price for Car and Light Truck Tires*, Tire Review (Mar. 23, 2022), https://www.tirereview.com/pirelli-increases-price-for-tires/.

121.    Another wave of price increases followed beginning in June 2022. Continental increased its prices on Continental- and General-branded passenger and light truck tires in the U.S. market by an undisclosed amount effective June 1, 2022.[104] Michelin increased prices on the majority of its passenger and light truck replacement tires in the U.S. and Canada, with the increases ranging from 5-12%, effective June 1, 2022.[105] Effective June 15, 2022, Pirelli increased its prices for car and light truck tires in the U.S. by up to 10%, citing "changing market conditions."[106] Effective July 1, 2022, Goodyear and BSAM each increased prices by up to 10% on consumer tires in the U.S., including Bridgestone's Bridgestone, Firestone, and Fuzion passenger, light truck, and motorcycle tires and Goodyear's Goodyear and Cooper brand consumer tires.[107]

122.    Then, on October 1, 2022, BSAM again increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck tires by up to 9%.[108]

123.    Effective January 1, 2023, Michelin and BSAM each increased their tire prices. Michelin increased prices on select passenger and light trucks tires by up to 9%.[109] BSAM increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires in the U.S. and Canada by an undisclosed amount.[110] On January 15, 2023,

---

[104]  *Conti to raise U.S. tire prices again*, Tire Business (Apr. 19, 2022), https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1.

[105]  Christian Hinton, *Michelin to Implement Price Increases*, Tire Review (May 11, 2022), https://www.tirereview.com/michelin-price-increase/.

[106]  Brian Coote, *Pirelli to Increase Prices on U.S. PLT Tires*, Tire Review (May 17, 2022), https://www.tirereview.com/pirelli-increase-prices-plt-tires/.

[107]  *Goodyear to raise North America tire prices July 1*, Tire Business (June 15, 2022), https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.

[108]  Christian Hinton, *Bridgestone Announces Price Increase up to 15% on Select Tires*, Tire Review (Sept. 8, 2022), https://www.tirereview.com/bridgestone-price-increase-3/.

[109]  Samuel Grom, *Michelin Introduces Price Increases in Canada, U.S.*, Tire Review (Dec. 13, 2022), https://www.tirereview.com/michelin-price-increases/.

[110]  Samuel Grom, *Bridgestone Americas Increases Replacement Tire Prices*, Tire Review (Dec.

Pirelli followed, increasing its prices for car and light truck tires by up to 10%.[111]

### 2. There is No Explanation for Defendants' Parallel Price Increases Other Than Collusion

124.    Defendants repeatedly claimed that their price increases were due to increased input costs. That purported justification was pretextual and could not fully account for the significant increases in prices over the Class Period.

125.    Rubber is the main material used in tires. The price of rubber fell more than 16% in 2021 and fell a further 22% in 2022.[112] Despite the decrease of raw material costs, Defendants continued to increase prices in a parallel fashion during 2021 and 2022, as detailed above.

126.    Sales volume also did not decrease despite price increases, as would be expected in a competitive market where competitors would seize the opportunity to gain market share by offering more favorable pricing. One industry source noted that "[i]t goes without saying that 2021 and 2022 were unusually strong years" and that "the medium truck tire category [] grew by more than 20%" between 2021 and 2022.[113] Defendants' ability to reliably increase prices and volume at the same time provides strong circumstantial evidence of their conspiracy. These increases in volume and profits during the relevant period further demonstrate that Defendants' explanations for their price increases were pretextual. Defendants' coordinated price increases can only be explained by the existence of a

---

13, 2022), https://www.tirereview.com/bridgestone-americas-increased-prices/.
[111] *Pirelli to Increase Prices for Car and Light Truck Tires*, Tire Review (Dec. 12, 2022), https://www.tirereview.com/pirelli-increase-prices-tires/.
[112] Singapore Commodity Exchange, Rubber Price, Index Mundi (As of Mar. 1, 2024), https://www.indexmundi.com/commodities/?commodity=rubber&months=60.
[113] Mike Manges, *The Tire Industry is Returning to Pre-Pandemic Levels*, Modern Tire Dealer (Sept. 18, 2023), https://www.moderntiredealer.com/retail/article/33010538/when-down-is-up-the-tire-industry-in-2023.

conspiracy to fix prices.

### 3.    Defendants Coordinated to Restrict Supply of New Replacement Tires in the United States

127.    Defendants also began colluding on the supply of Tires in 2020. That year, COVID-19 lockdowns led to a 13% reduction in the amount of driving and a 23% decline in replacement Tire rates.[114]

128.    Despite most manufacturers shutting down production for a few months in 2020, there was no shortage of Tires on the market in 2020 due to the decrease in demand. Nonetheless, Defendants ramped up supply to more than make up for the shutdowns in production, leading to excess supply in the market by 2022. As a result, Defendants announced decreases beginning that year. Goodyear explained that "in order to address softening industry demand and prevent the buildup of excess inventory, we reduced production in the fourth quarter of 2022 at most of our Tire manufacturing facilities, resulting in a reduction of approximately 3.5 million units compared to production in the fourth quarter of 2021."[115]

129.    Various statements by Defendants' executives emphasized that this "capacity discipline" had to be exercised collectively by industry members. For example, Goodyear Chief Executive Officer and President Richard Kramer explained during Goodyear's first quarter 2023 earnings call Goodyear was "focus[ing] on making sure that we're not putting too many tires in inventory that could impact negatively that supply/demand equation."[116]

---

[114] *Effects of Pandemic Bring Tire Industry to Slow Roll, J.D. Power Finds*, Associated Press (Mar. 18, 2021), https://apnews.com/article/business-consumer-products-and-services-diseases-and-conditions-retail-and-wholesale-Tire-retail-3f5b8d0a8eef411bbe57549ee4f911a1.

[115] The Goodyear Tire & Rubber Co., Annual Report (Form 10-K) (Feb. 13, 2023), https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296.

[116] The Goodyear Tire & Rubber Co., *The Goodyear Tire & Rubber Company *GT (Q1 2023 Earnings Call Transcript* (May 6, 2023), https://seekingalpha.com/article/4600876-goodyear-tire-

Kramer has also previously noted that "[t]here's a lot of manufacturing capacity in the industry as we move ahead."[117]

### 4.      Defendants Had a Motive to Conspire

130.    Following the onset of the COVID-19 pandemic, profit and revenue in the tire industry decreased while the costs of goods sold increased. But unilaterally raising prices risked driving market share to horizontal competitors, who could react by holding prices steady to capture market share. Defendants avoided this predicament by agreeing on coordinated price increases, as explained above.

131.    By 2023, inflation eased, supply chain logistics were substantially improving, and each Defendant had an excess of supply due to demand decreases.[118] For example, in November 2023, the President of the union at the Bridgestone Americas Inc. tire plant in Morrison, Tennessee stated that "Even with [] lower production levels, we still have huge amounts of inventory—more than our warehouse can handle. Our warehouse is full of truck and bus tires. In addition, we have 150 to 175 . . . trailers on our plant's property that are completely full of tires."[119]

132.    In a competitive market, where input costs decrease and supply is high, prices should decrease because inflated prices would lead to a loss of market share.  Yet Tire prices remain high, as described above.

---

and-rubber-company-gt-q1-2023-earnings-call-transcript/.

[117] The Goodyear Tire & Rubber Co., *The Goodyear Tire & Rubber Company (GT) Q4 2022 Earnings Call Transcript* (Feb. 9, 2023), https://seekingalpha.com/article/4576816-goodyear-tire-and-rubber-company-gt-q4-2022-earnings-call-transcript.

[118] Mike Manges, *The Tire Industry is Returning to Pre-Pandemic Levels*, Modern Tire Dealer (Sept.  18,  2023),  https://www.moderntiredealer.com/retail/article/33010538/when-down-is-up-the-tire-industry-in-2023.

[119] Joy Kopcha, *Do Tire Tiers Exist, and Are They Competitive?*, Modern Tire Dealer (Nov. 7, 2023),  https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-theycompetitive.

### H.       The European Commission Is Investigating Defendants' Collusive Conduct

133.     Defendants' collusive conduct to restrain the Tire market began to come to light in early 2024, when governmental authorities conducted unannounced raids at locations throughout Europe.

*134.*     On January 30, 2024, the EC announced that it had conducted raids at the premises of ***several suppliers in the new replacement tire market:***

> The European Commission is carrying out unannounced inspections at the premises of companies active in the tyres industry in several Member States.
>
> The Commission has concerns that the inspected companies may have violated EU antitrust rules that prohibit cartels and restrictive business practices (Article 101 of the Treaty on the Functioning of the European Union).
>
> The products concerned by the inspections are new replacement tyres for passenger cars, vans, trucks and busses sold in the European Economic Area. ***The Commission is concerned that price coordination took place amongst the inspected companies, including via public communications.***
>
> The Commission officials were accompanied by their counterparts from the relevant national competition authorities of the Member States where the inspections were carried out.
>
> Unannounced inspections are a preliminary investigatory step into suspected anticompetitive practices. The fact that the Commission carries out such inspections does not mean that the companies are guilty of anti-competitive behaviour, nor does it prejudge the outcome of the investigation itself.[120]

135.     Shortly after the EC's announcement, Defendants confirmed that they were subjects of the investigation.[121]

---

[120]  Press Release, European Commission, Commission carries out unannounced antitrust inspections in the tyres sector (Jan. 30, 2024), https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561 (emphasis added).

[121]  Foo Yun Chee and Ilona Wissenbach, *Pirelli, Continental, Michelin and Nokian targeted in EU raids*, Reuters (Jan. 31, 2024), https://www.reuters.com/business/au n/eu-antitrust-regulators-raid-tyre-makers-concerns-about-possible-cartel-2024-01-30/.

## I.      Defendants are Recidivist Violators of Antitrust Laws

136.    The tire industry for years has been highly concentrated, and there is a history of antitrust violations by Tire manufacturers.

137.    In 2008, the South African Competition Authority conducted search and seizure operations at the premises of Bridgestone, Dunlop, and the South African Tyre Manufacturers' Conference ("SATMC").[122] As a result of these raids, South Africa's competition authority issued fines against Goodyear and Continental, while Bridgestone South Africa (Pty) Ltd. escaped a fine after admitting to taking part in the alleged cartel and receiving conditional immunity after filing a leniency application with the regulator.[123]

138.    In its application for leniency, Bridgestone admitted that it held telephonic discussions and met with its competitors during the period 1999 to 2007 to agree in principle that they should cooperate to ensure stability in the market.  The meetings, which were attended by the tire manufacturers' sales and marketing representatives, coordinated the timing and the average percentage price increase of tires, agreed on the discount structure to be given to tire dealers and messages to be given to the market explaining the increases.[124]

139.    Additionally, Bridgestone and Pirelli were also named in a complaint involving a conspiracy to fix, raise, maintain, or stabilize prices, rig bids, and allocate markets and/or customers for marine hose in 2018.[125]

140.    In 2014, Bridgestone also agreed to plead guilty and pay a $425 million fine

---

[122]     *Tyresome collusion: tribunal hearing into alleged tyre cartel*, IR Global, https://irglobal.com/article/tyresome-collusion-tribunal-hearing-into-alleged-tyre-cartel/.
[123]     Melissa Lipman, *S. Africa Targets Goodyear, Other in Tire Cartel Case*, Law360 (Sept. 8, 2010),    https://www.law360.com/articles/192122/s-africa-targets-goodyear-others-in-tire-cartel-case?copied=1.
[124]     *Heavy Penalty Sought in South Africa Price Fix Scheme*, Tire Review (Sept. 8, 2010), https://www.tirereview.com/heavy-penalty-sought-in-south-africa-price-fix-scheme/.
[125]     *In re Marine Hose Antitrust Litig.*, No. 1:08-md-018888-DLG, (S.D. Fla.).

for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in cars sold in the United States and elsewhere.[126]

141.    In 2019, Defendants Bridgestone and Continental were amongst 52 automotive suppliers that paid a total of $23 million in settlements for antitrust law violations brought by the California Attorney General.[127]

## V.    ANTITRUST IMPACT

142.    During the Class Period, Plaintiffs and members of the Class purchased Tires directly from the Defendants. As a result of Defendants' illegal conduct, Plaintiffs and the members of the Class were compelled to pay, and did pay, artificially inflated prices for Tires. Those prices were substantially greater than the prices that members of the Class would have paid, absent the illegal conduct alleged herein, because: (1) the price of Tires was artificially inflated by Defendants' illegal conduct, and (2) supply of Tires was artificially restricted by Defendants' illegal conduct. The supracompetitive prices were paid at the point of sale, which is where Plaintiffs and the members of the Class suffered antitrust impact.

143.    As a consequence, Plaintiffs and members of the Class have sustained substantial damages to their business and property in the form of overcharges. The full amount and form of such damages will be calculated after discovery and upon proof at trial.

144.    Defendants' anticompetitive actions enabled them to directly charge Plaintiffs

---

[126] U.S. Department of Justice, *Bridgestone Corp. Agrees to Plead Guilty to Price Fixing on Automobile Parts Installed in U.S. Cars* (Feb. 13, 2014), https://web.archive.org/web/20230331231517/https://www.justice.gov/opa/pr/bridgestone-corp-agrees-plead-guilty-price-fixing-automobile-parts-installed-us-cars#:~:text=Bridgestone%E2%80%99s%20involvement%20in%20the%20conspiracy,Agent%20in%20Charge%20Stephen%20D.

[127] Press Release, State of California Department of Justice, Attorney General Becerra Secures $23 Million in Settlements with Auto Parts Manufactures for Violations of Antitrust Law (Dec. 4, 2019), https://oag.ca.gov/news/press-releases/attorney-general-becerra-secures-23-million-settlements-auto-parts-manufacturers.

and members of the Class prices in excess of what they otherwise would have been able to charge, absent their unlawful collusion described herein.

145.    The prices were inflated as a direct and foreseeable result of Defendants' anticompetitive conduct.

146.    The inflated prices the members of the Class paid are traceable to, and the foreseeable result of, the overcharges by Defendants.

## VI.    INTERSTATE AND INTRASTATE COMMERCE

147.    During the Class Period, Defendants used various devices to effectuate the illegal acts alleged herein, including the United States mail, interstate and foreign travel, and interstate and foreign wire commerce. All Defendants engaged in illegal activities, as charged herein, that occurred within the flow of, and substantially affected, interstate commerce, and that had a direct and substantial effect upon such commerce.

148.    During the Class Period, Defendants manufactured, sold, and shipped tires in a continuous and uninterrupted flow of interstate commerce, which included sales of Tires into each state sold to or paid for by Plaintiffs and members of the Class. Defendants' conduct had, and continues to have, a direct, substantial, and reasonably foreseeable effect on interstate commerce.

## VII.    CLASS ACTION ALLEGATIONS

149.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated as a class action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure (the "Class"):

All persons and entities that purchased at least one new replacement tire for a passenger car, van, truck, or bus directly from any Defendant or co-conspirator within the United States and its territories from December 1, 2020 until the time that the anticompetitive effects of Defendants'

conduct has ceased (the "Class Period").

150.    Excluded from the Class are:

      a.     Defendants and their counsel, officers, directors, management, employees, subsidiaries, and affiliates;

      b.     all federal governmental entities;

      c.     all counsel of record; and

      d.     all judges assigned to this case and any members of their immediate families.

151.    Defendants acted, or refused to act, on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

152.    Members of the Class are so numerous and geographically dispersed that joinder is impracticable. Plaintiffs reasonably believe that there are at least thousands of members of the Class, in an amount to be determined in discovery and at trial.

153.    Plaintiffs' claims are typical of the claims of members of the Class. Plaintiff and all members of the Class were damaged by the same wrongful conduct by Defendants, all paid artificially inflated prices for Tires, and the relief sought is common to the Class.

154.    Plaintiffs will fairly and adequately protect and represent the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, the Class.

155.    Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action litigation, and who have particular experience in prosecuting antitrust class actions and other complex litigation.

156.    Questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual members of the Class, because Defendants have acted on grounds generally applicable to the entire Class. Such generally applicable

48

conduct is inherent in Defendants' wrongful conduct.

157. Questions of law and fact common to the Class include:

  a. Whether Defendants engaged in an agreement, combination, or conspiracy to fix, inflate, maintain, or stabilize the prices paid for Tires during the Class Period;

  b. Whether Defendants engaged in an agreement, combination, or conspiracy to limit the supply of Tires during the Class Period;

  c. Whether such agreements constituted violations of the Sherman Antitrust Act;

  d. The identity of the participants of the alleged conspiracy;

  e. The duration of the conspiracy alleged herein, and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

  f. Whether Defendants fraudulently concealed their misconduct;

  g. Whether, and to what extent, Defendants' anticompetitive scheme inflated prices of Tires above competitive levels;

  h. Whether Defendants' conduct, in whole or in part, caused antitrust injury to the business or property of Plaintiffs and members of the Class in the nature of overcharges;

  i. The nature and scope of injunctive relief necessary to restore competition; and

  j. Measure of damages suffered by the Class in the aggregate.

158. Class action treatment is a superior method for the fair and efficient adjudication of this controversy. Among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

159. Individual joinder of all damaged members of the Class is impractical and the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for

Defendants. Accordingly, the benefits of proceeding through the class mechanism, including providing injured persons with a method of obtaining redress for claims that are not practicable for them to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

160.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## VIII.    TOLLING OF THE STATUTE OF LIMITATIONS

161.    Class member purchases of Tires within four years prior to the filing of this Complaint are not barred by the applicable four-year statutes of limitations; the statutes are not required to be tolled for these claims to be actionable.

162.    Plaintiffs and the Class did not know, and could not have known, of Defendants' illegal conduct until the EC announced dawn raids in the Tire industry in conjunction with competition authorities of various European Union member states on January 30, 2024. Before then, Plaintiffs and the Class had no reason to believe that they paid prices for Tires that were affected by Defendants' illegal conduct, and thus had no duty until then to investigate the claims set forth in this Complaint. Defendants' secret price-fixing agreements were inherently self-concealing because, as Defendants knew, its disclosure would have exposed it to civil liability and governmental enforcement actions, as in fact occurred when the scheme came to light.

163.    Defendants' business practices are subject to antitrust laws, and so it was reasonable for Plaintiffs and members of the Class to presume that Defendants were operating in a competitive market. A reasonable person under the circumstances would not have had occasion to suspect that Defendants were unlawfully coordinating pricing and supply for Tires until January 30, 2024, when the EC announced its raids on the Tire industry.

164. Additionally, Defendants engaged in affirmative acts that were designed to mislead and conceal their illegal conduct and gave pretextual justifications for the pricing changes and reduced output that occurred during the Class Period. For example, Michelin attributed its 12% price increase on passenger and light truck replacement Tires in 2022 to "market dynamics."[128] Goodyear justified its July 1, 2022 price increase on consumer Tires to rising raw-materials and other inflation-impacted costs.[129] Pirelli attributed its April 11, 2022 price increase to "changing market conditions."[130]

165. Accordingly, to the extent that tolling is necessary to advance some or all of the claims alleged by Plaintiffs and the Class, the four-year statutes of limitations governing claims under the Sherman Act were tolled at least until January 30, 2024, pursuant to the injury-discovery rule and the doctrine of fraudulent concealment.

## COUNT I
## VIOLATION OF SECTIONS 1 AND 3 OF THE SHERMAN ACT
## 15 U.S.C. §§ 1, 3

166. Plaintiffs incorporate and realleges all paragraphs in this Complaint as though fully set forth below.

167. From at least December 1, 2020, Defendants engaged in an unlawful contract, combination, or conspiracy in unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1,3 by artificially restraining competition with respect to the price and supply of new, replacement tires for passenger cars, vans, trucks, and buses

---

[128] Michelin N.A., *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market,* PR Newswire (Dec. 1, 2021), https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-america-market-301435108.html.

[129] *Goodyear to raise North America tire prices July 1*, Tire Business (June 15, 2022), https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.

[130] Christian Hinton, *Pirelli Increases Price for Car and Light Truck Tires*, Tire Review (Mar. 23, 2022), https://www.tirereview.com/pirelli-increases-price-for-tires/.

sold within the United States.

168.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators did those things they combined and conspired to do, including:

    a.    exchanging competitively sensitive information among themselves, with the aim to fix, increase, maintain, or stabilize prices of Tires in the United States and elsewhere;

    b.    participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise to fix, increase, maintain, or stabilize prices of Tires in the United States and elsewhere; and

    c.    participating in meetings and conversations among themselves to implement, adhere, and police the agreements they reached.

169.    Defendants' conspiracy had the following effects, among others:

    a.    price competition in the market for new, replacement tires for passenger cars, vans, trucks, and buses in the United States has been restrained, suppressed, and/or eliminated;

    b.    prices for Tires provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States and elsewhere;

    c.    Plaintiffs and members of the Class who purchased Tires from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

170.    Defendants' conduct constitutes a *per se* violation of Sections 1 and 3 of the Sherman Act.

171.    Defendants' anticompetitive and unlawful conduct has proximately caused injury to Plaintiffs and members of the Class by restraining competition and thereby raising, maintaining, and/or stabilizing the price of Tires at levels above what would have occurred if competition had prevailed.

172.    While some of the alleged anticompetitive acts were performed by only one, or a subset of Defendants, all were accomplished as part of Defendants' overarching

conspiracy to restrain competition and raise and/or maintain the price of Tires. Each Defendant played its respective role in that overarching conspiracy, as addressed in detail above, which collectively allowed the conspiracy to succeed and resulted in the unreasonable restraint of trade.

173.    There is no valid procompetitive business justification for Defendants' anticompetitive conduct, and to the extent Defendants offer one, it is pre-textual and not cognizable. Any procompetitive benefits of Defendants' conduct do not outweigh the anticompetitive harms.

174.    As the direct and foreseeable result of Defendants' agreements in restraint of trade, Plaintiffs and members of the Class have been injured, and will continue to be injured, by paying more for Tires purchased from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy. Plaintiffs' and Class Members' injuries did not end upon the cessation of Defendants' lockstep price increases because Defendants' actions disrupted the trajectory of pricing that, upon information and belief, continues at least until the present day.

175.    Defendants are recidivists and continue to assert that their conduct was legitimate. The fact that the conduct alleged may have ceased at some point does not mean that Defendants will not engage in similar types of price-fixing in the future.

176.    For this conduct, Plaintiffs and members of the Class are entitled to treble damages, injunctive relief, and attorneys' fees and costs pursuant to Section 4 of the Clayton Act (15 U.S. Code § 15) and 15 U.S.C. § 26.

## IX.    DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the proposed Class, pray for judgment against Defendants and that this Court:

a.    Determine that this action may be maintained as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to the Class, and appoint Plaintiffs as the named representatives of the Class and the undersigned counsel as Class counsel;

b.    Enter joint and several judgments against the Defendants and in favor of Plaintiffs and the Class;

c.    Adjudge and decree that the acts of the Defendants are illegal and unlawful, including the agreement, contract, combination, or conspiracy, and acts done in furtherance thereof by Defendants and their co-conspirators be adjudged to have been a *per se* violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

d.    Award Plaintiffs and the Class treble damages in an amount to be determined at trial, plus interest in accordance with law;

e.    Award Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

f.    Permanently enjoin Defendants both from continuing the unlawful conduct alleged here, and from engaging in similar or related conduct in the future; and

g.    Award such other and further relief as the Court deems just and proper.

## X.    JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and the Class, demand a trial by jury of all issues so triable.

Dated: March 13, 2024

/s/ *Juan Jose Perez*
**PEREZ & MORRIS LLC**
Juan Jose Perez (Bar No. 0030400)
Kevin L. Murch (Bar No. 0066833)
jperez@perez-morris.com
kmurch@perez-morris.com
445 Hutchinson Avenue, Ste. 600
Columbus, OH 43235
Telephone: (614) 431-1500
Facsimile: (614) 431-3885

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Joseph H. Meltzer

jmeltzer@ktmc.com
Ethan Barlieb
ebarlieb@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056